UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AFFCO INVESTMENTS, LLC, *ET AL.*, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-3379 |
| | § | |
| KPMG, LLP, *ET AL.*, | § | |
|     *Defendants*. | § | |

### ORDER

Pending before the court is defendant Proskauer Rose LLP's motion to dismiss without leave to replead for lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6) on counts one through seven, count nine, and certain of plaintiffs' damages demands. Dkt. 91. Upon consideration of the motion, the response, the reply, the complaint, and the applicable law, the motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

This case involves a complicated scheme whereby taxpayers with substantial income or capital gains could claim a purportedly legal tax loss by executing a series of transactions relating to European-style digital options ("the Scheme"). According to the facts pled in the complaint—which the court accepts as true for the purposes of this inquiry—the Affco Plaintiffs[1] allege that although the KPMG Defendants[2] marketed the Scheme based on its tax-avoidance benefits, they believed, and all official documentation represented, that these European-style digital options were legitimate investment vehicles through which investors could earn a reasonable pre-tax

---

[1] The Affco Plaintiffs includes La Git ** Trust, John H. Powers, and the Powers Children Trust.

[2] For the purposes of this order, the KPMG Defendants includes KPMG. LLC, Deke Carbo, Helios Financial, LLC, Helios Trading, LLC, Mox Tan, James Haber, Alpha Consultants, LLC, Alpha Consultants, Inc., Irwain Rosen, and Ivan Ross, Refco Capital Markets, Ltd., Refco Capital LLC, Grant Thornton International, and Grant Thornton, LLP.

profit. As part of the sales pitch for the Scheme, the KPMG Defendants assured the Affco Plaintiffs that the strategy had been analyzed and approved by various tax experts, including the Sidley Defendants.[3] Therefore, based on the assurances and representations of the KPMG Defendants and bolstered by the reputation of the Sidley Defendants, the Affco Plaintiffs agreed to use the Scheme, thereby setting in motion a series of transactions.

These transactions included the formation of several LLC's. The LLC's were created for the sole purpose of employing the Scheme and were managed by the Helios Defendants[4] and the Refco Defendants.[5] Under the terms of the digital options contracts, the decisions regarding the buying and selling of the options were completely controlled by the Refco Defendants. The LLC's entered into offsetting digital options contracts. In order to cause these options to eventually offset—because the goal was an apparent, not actual, losses—the Scheme employed a shell game of ownership interests among the LLC's and the various types of membership interests. At the end of this series of transactions, the Affco Plaintiffs were left with the promised apparent losses for tax purposes. From the time the Affco Plaintiffs agreed to the Scheme, to the time the losses were generated, the Affco Plaintiffs were passive investors. They may have started the train in motion, but once the ride had started there was no getting off.

The complaint mainly focuses on the actions and representations of the KPMG and Sidley Defendants. Proskauer Rose, the movant, came into the picture after the transactions had concluded. The facts are somewhat unclear in the complaint. After the Scheme was completed, but before the Affco Plaintiffs filed their tax returns, the IRS had issued two notices addressing certain types of

---

[3] The Sidley Defendants includes Sidley Austin, LLP, Sidley Austin, and Raymond J. Ruble.

[4] The Helios Defendants includes Helios Financial, LLC, Helios Trading, LLC, James Haber, and Mox Tan.

[5] The Refco Defendants includes Refco Capital Markets, Ltd., and Refco Capital, LLC.

2

transactions that, in the opinion of the IRS, would be prohibited. It appears that the Affco Plaintiffs became worried that in light of the recent IRS notices, they would need to report their participation in the Scheme. At the behest of the KPMG Defendants, the Affco Plaintiffs sought a tax opinion from Proskauer Rose after the issuance of the first IRS notice, and a supplemental tax opinion after the issuance of the second IRS notice. Proskauer Rose's two tax opinions essentially stated that the Affco Plaintiffs' transactions were not substantially similar to any IRS prohibited transactions, and therefore they were not required to report their involvement in the Scheme on their income tax returns. Additionally, Proskauer Rose opined that in the event its opinion was incorrect, the Sidley Defendants' tax opinion letters and the Proskauer Rose tax opinion letters should provide a defense from the IRS penalties for the Affco Plaintiffs.

Following the advice of Proskauer Rose—and the KPMG and Sidley Defendants, the Affco Plaintiffs reported their losses from the Scheme on their 2001 income tax returns. Additionally, they did not report their participation in the Scheme. As a result, they were investigated by the IRS for participation in an abusive tax shelter, eventually paying millions in taxes, interest, and penalties. Moreover, because they did not report their participation in the Scheme, they were unable to take advantage of an IRS amnesty program for participants who disclosed participation in European-style digital options transactions.

In their suit, the plaintiffs allege nine causes of action: Civil RICO; federal securities fraud under section 10(b) and 20(a) of the Securities Exchange Act; state securities fraud under the Texas Blue Sky Act; violations of the Texas Deceptive Trade Practices Act; common law breach of contract; unjust enrichment and detrimental reliance; breach of fiduciary duty; fraud; negligence/professional malpractice; and civil conspiracy.

ANALYSIS

Proskauer moves the court to dismiss all counts against it, except negligence/professional malpractice, under both Rule 12(b)(2) and Rule 12(b)(6).

**1.     Lack of Personal Jurisdiction Under Rule 12(b)(2)**.

Proskauer moves for dismissal alleging that the court lacks personal jurisdiction over it. It argues that the plaintiffs have failed to demonstrate either general or specific jurisdiction over Proskauer in Texas. However, the Securities Exchange Act's jurisdiction provision, 15 U.S.C. § 78aa, allows for nationwide service. And, the Fifth Circuit has recently reaffirmed its holding that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant had minimum contacts with the United States." *Luallen v. Higgs*, 277 Fed. Appx. 402, 404 (5th Cir. 2008) (quoting *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir.1994)). Proskauer does not argue, nor can it, that it does not have minimum contacts with the United States.

Instead, Proskauer argues that nationwide personal jurisdiction is inapplicable in this case, because the plaintiffs' RICO and Securities Act claims—the only claims providing nationwide service—are meritless. Dkt. 92 at 6 n.2. Even if the court were to take the inquiries out of order and address the merits of the case before addressing jurisdiction, the plaintiffs' claim under the Securities Act is not "immaterial and made solely for the purpose of obtaining jurisdiction." *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 89, 118 S. Ct. 1003 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974)). Therefore, this case cannot be categorized as one of the few extraordinary cases in which the jurisdiction-first rule may be diluted. *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563 (1999). And,

4

as explained below, unlike plaintiffs' Rico claim which fails as a matter of law, their Securities Act claim fails for lack of adequate pleading. It is possible that the plaintiffs could replead sufficiently to state a claim under the Securities Act. And, the Securities Act provides nationwide service. 15 U.S.C. § 78aa. Therefore, dismissal for lack of personal jurisdiction is inappropriate here. *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.").

**2.      Failure to State a Claim Under 12(b)(6).**

Proskauer also moves for dismissal of all but the plaintiffs' negligence/professional malpractice claims.

### A.      Count One - RICO

Section 1964 of Title 18 of the United States Code provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). A plaintiff states a claim for a violation of § 1962 if it can demonstrate "a pattern of racketeering activity." § 1962(a). A pattern of racketeering activity must be based on at least two acts of racketeering activity within the last 10 years as defined in § 1961(1). § 1961(5). However, Congress amended RICO as part of the Private Securities Litigation Reform Act to bar civil RICO actions based on predicate acts that include "any conduct that would have been actionable as fraud in the purchase or sale of securities." § 1964(c).

Defendant argues that the predicate acts alleged by the plaintiffs fall into the category of acts barred by the PSLRA. Plaintiffs' response is two-fold. First, they argue that defendant does not contend that its conduct occurred in connection with the purchase or sale of securities. Therefore, they argue that defendant cannot assert the PSLRA bar. Dkt. 113 at 20. However, this assertion misapprehends the nature of the PSLRA bar. The PSLRA "bars claims based on *conduct* that could be actionable under the securities laws." *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003) (emphasis added). The inquiry focuses on the conduct the plaintiffs pled as the predicate act or acts for their RICO claim. Section 10(b) of the Securities Exchange Act of 1934 reaches any fraud "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). The Supreme Court construes this phrase "not technically and restrictively, but flexibly to effectuate [the statute's] remedial purposes." *SEC v. Zanford*, 535 U.S. 813, 819, 122 S. Ct. 1899 (2002) (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151, 92 S. Ct. 1456 (1972) (internal quotation marks omitted)). Proskauer Rose's specific action need not be actionable, but may be part of "a single fraudulent scheme." *Seippel v. Jenkins & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 373 (S.D.N.Y. 2004). As pled by the plaintiffs, all parties involved worked toward the common goal of benefitting financially by inducing the plaintiffs to engage in the Scheme. Proskauer Rose, it is alleged, gave faulty tax opinions at the behest of the other participants in the Scheme presumably in furtherance of the Scheme. The conduct upon which the plaintiffs base their RICO claims could be actionable as fraud in connection with the purchase or sale of any security as discussed below. Therefore, the PSLRA bars their claim—irrespective of Proskauer Rose's admission or lack thereof.

Which brings the court to the plaintiffs' second argument: the digital options contracts are not securities under the Exchange Act. Dkt. 113 at 20. At least one district court in the Fifth Circuit

6

has examined digital options contracts and determined that they are securities. *RA Inv. I, LLC v. Deutsche Bank AG*, No. 3:04-CV-1565-G, 2005 WL 1356446 at *8 (N.D. Tex. June 6, 2005) (digital option contracts are securities). Many other courts when faced with digital options contracts have declined to answer the question regarding the digital options themselves, finding instead some other securities involved in the scheme on which to predicate the bar. *See, e.g., Stechler v. Sidley, Austin, Brown & Wood, L.L.P.*, 382 F. Supp. 2d 580, 597 (S.D.N.Y. 2005) (strategy involved sale of stock); *King v. Deutsche Bank AG*, No. CV 04-1029-HU, 2005 WL 611954 at *17-21 (D.Or. Mar. 8, 2005) (scheme was initiated to avoid taxes on large gains from sale of stock); *Seippel*, 341 F. Supp. 2d at 374 (scheme coincided with sale of stock). Likewise here, although the court agrees with the Northern District of Texas that the digital options are likely securities themselves, the court need not reach that question, because the formation of the LLC's necessary to the transaction and the manipulation of the ownership shares in those LLC's constitute securities.

As stated above, Section 10(b) of the Securities Exchange Act of 1934 reaches any fraud "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). Both Section 2(1) of the Securities Act of 1933 and Section 3(a)(10) of the Securities Exchange Act of 1934 include "investment contract" in their definitions of a "security." 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). "The 'investment contract' has been one of the means employed to bring 'instruments of more variable character' within the scope of the federal securities laws." *Youmans v. Simon*, 791 F.2d 341, 345 (5th Cir. 1986) (quoting *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686, 105 S. Ct. 2297 (1985)) (internal quotations omitted). The Supreme Court in *SEC v. W.J. Howrey Co.* defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. 293, 298-99, 66 S. Ct. 1100 (1946).

The Fifth Circuit has identified three distinct elements to the *Howrey* test "(1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of individuals other than the investor." *Williamson*, 645 F.2d at 417. The plaintiffs state in their complaint that they capitalized the LLC's. Dkt. 1 at 16. Thus, they meet the first element requiring an investment of money. And, they have more than adequately alleged a common enterprise. The entire complaint contains facts regarding the Scheme—the common enterprise upon which their RICO claim is predicated. The last question then is whether they had "an expectation of profits to be derived solely from the efforts" of others. *Williamson*, 645 F.2d at 417.

On the question of profits, the plaintiffs had an expectation of profits in both a positive and negative sense. In the positive sense, the plaintiffs allege that they believed that the digital options were a legitimate investment. Dkt. 1 at 12. "In documenting the [Scheme] for the taxpayers, the Helios [Defendants and] the Alpha Defendants described the [Scheme] as 'asset allocation' strategies and ascribed 'investment values' to the various options positions acquired and transferred by the taxpayers." *Id.* In the negative sense, the Scheme itself was intended to reduce their tax liability, and thus increase their income. *Id.* So, all that remains is to determine whether those profits were derived solely from the efforts of others. Courts do not construe the word "solely" in its literal sense. *Williamson*, 645 F.2d at 418. Instead, courts look to substance over form and examine the economic realities of the scheme. *Id.* Therefore, the court should ask "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id.*

Generally speaking ownership interests in corporations and limited partnerships are considered securities because the partners lack control, while ownership interests in general partnerships and joint ventures tend not to be securities because of the active role of the partners.

8

*SEC v. Merchant Capital, LLC*, 483 F.3d 747, 755-56 (11th Cir. 2007) (quoting *Williamson*, 645 F.2d at 423). However, LLC's are a hybrid entity with elements of traditional corporations and general partnerships, resisting categorical classification. *United States v. Leonard*, 529 F.3d 83, 89 (2d Cir. 2008). The supporting documents regarding the formation of the LLC's and distribution of management shares has not been provided to the court. However, even were the documents to reveal that the Affco Plaintiffs had some management powers over the LLC's, the allegations in the complaint demonstrate that they had no real authority which they were in fact capable of exercising. *Williamson*, 645 F.2d at 419-21 (citing *Fargo Partners v. Dain Corp.*, 540 F.2d 912, 914-15 (8th Cir. 1976) ("Where the investors' duties were nominal or insignificant, their roles were perfunctory or ministerial, or they lacked any real control over the enterprise, the courts have found investment contracts.")). The complaint alleges that "the Helios Defendants executed documents establishing three single-member LLC's . . . to be managed by the Helios Defendants, for the purpose of implementing the Strategy." Dkt. 1 at 17. Also, the operating agreement of Affco Investments, 2001, LLC "specified that [it] would be managed by the Helios and Alpha Defendants."[6] The plaintiffs knew nothing about digital options and under the terms of the contract did not exercise any control over the decision of when to exercise the options. Since the purchase and sale of the options was the sole purpose of the LLC's, the plaintiffs were completely passive investors. Congress designed the Securities laws to protect exactly these type of passive investors. *Leonard*, 529 F.3d at 88. Therefore, the court finds that the LLC's created and manipulated for the purpose of effectuating the Scheme are investment contracts and thus, securities. And, the presence of securities

---

[6] The Alpha Defendants includes Alpha Consultants, LLC, Alpha Consultants, Inc., Irwin Rosen, and Ivan Ross.

in the Scheme triggers the PSLRA's bar to the plaintiffs' RICO claims. Accordingly, the plaintiffs' RICO claims against Proskauer fail as a matter of law.[7]

### B. Count Two - Federal Securities Fraud

As their second cause of action, the plaintiffs assert violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a). Proskauer Rose moves for dismissal of plaintiffs' federal securities claim because they have failed to adequately plead reliance or scienter. The plaintiffs respond that because Proskauer Rose has argued that the PSLRA bar operates to bar the plaintiffs' RICO claim, it may not now move to dismiss their PSLRA claim. In fact plaintiffs go one step further and argue that because the court has determined that the PSLRA bar applies, it may not now dismiss the plaintiffs' PSLRA claim. Additionally, they argue that they have adequately pled scienter.

Without belaboring the point, the court finds that it can dismiss the plaintiffs' PSLRA claim in spite of the application of the PSLRA bar to their RICO claim. Section 1964 states that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). As discussed above, it is the predicate *conduct* that triggers the bar, not the parties. *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000); *see also In re Enron*, 284 F.Supp.2d at 621. Therefore, the court turns to the question of the adequacy of the plaintiffs' complaint.

### 1. Section 10(b) Claim

In considering 12(b)(6) motions, courts generally must accept the factual allegations

---

[7] Even if the court were to separate Proskauer Rose's actions from those of all of the other defendants thereby removing any contact with the Scheme, the plaintiffs' RICO claims would still fail because they would lack the common enterprise necessary for a RICO claim. However, the court finds that the actions of which the plaintiffs complain are inextricably entangled with the alleged Scheme. *See* Dkt. 1 at 23.

contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). However, the court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions". *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 550 (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir.2005)) (internal quotation marks omitted).

To avoid dismissal, fraud claims under section 10(b) of the Exchange Act must also satisfy the heightened pleading requirements imposed by Rule 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u (1995) ("PSLRA"). *Tellabs, Inc. v. Makor Issues & Rights*, ___ U.S. ___, 127 S.Ct. 2499, 2504 (2007). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "To satisfy Rule 9(b)'s pleading requirements, a plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.' " *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir.1997)). Furthermore, "[a]s set out in § 21D(b)(2) of the PSLRA, plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' " *Tellabs*, 127 S.Ct. at 2504 (quoting 15 U.S.C. § 78u-4(b)(2)).

Section 10(b) makes it illegal for a person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of the SEC's rules. To state a claim under section 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately [injured him]." *Fin. Acquisition Partners L.P. v. Blackwell*, 440 F.3d 278, 286 (5th Cir.2006). Because the court finds

that the plaintiffs have failed to plead sufficient facts to give rise to a strong inference of scienter, it will focus on this aspect of the 10(b) inquiry.

Under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Fifth Circuit has defined scienter as an "intent to deceive, manipulate, or defraud." *Southland*, 365 F.3d at 366 (internal citations, quotations and ellipsis omitted). The Act requires not only an inference of scienter, but a strong inference of scienter. Congress intentionally set exacting standards to curb abusive litigation. *See Tellabs*, 127 S.Ct. at 2504. In *Tellabs*, the court explained that a strong inference of scienter is one where the "inference of scienter [is] more than merely plausible or reasonable--it [is] cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 2504-05. The court should ask whether--accepting the allegations in the complaint as true and assessing them holistically rather than in isolation--"a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference." *Id.* at 2511. That is not to say that the plaintiffs bear the burden at this point to show scienter by a preponderance of the evidence, but "must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference." *Id.* at 2513 (emphasis in original). However, the plaintiffs may present circumstantial evidence of scienter to fulfill their obligation. *Cent. Laborers' Pension Fund*, 497 F.3d at 551.

In the instant case, plaintiffs pled few facts about Proskauer Rose. Those facts plaintiffs did plead were general and conclusory. For example, plaintiffs allege that Proskauer Rose shared a part of the Scheme when it provided tax opinions likely to pass muster with the IRS for a flat fee per opinion. Dkt. 1 at 7-8. Plaintiffs further allege that Proskauer Rose erroneously or fraudulently disregarded IRS notices when issuing their tax opinions. *Id.* at 13-14. They argue that other

defendants referred them to Proskauer Rose for a supplemental tax opinion. *Id.* at 21. The only specific acts they plead regarding Proskauer Rose all deal with the execution of an engagement letter and transmittal of the tax opinions themselves. *Id.* at 26. This generalized pleading simply does not satisfy the pleading requirements of either Rule 9(b) or the PSLRA. Therefore, the plaintiffs' § 10(b) claim must be dismissed for failure to plead adequate facts to support a strong inference of scienter.

However, this lack of detail is understandable because the complaint focused on the other 17 or so defendants. Since the time of the initial complaint, the landscape has changed substantially with the departure the other defendants. Therefore, the court finds that the plaintiffs should be given an opportunity to replead their PSLRA claim with the particularity required by Rule 9(b) and the PSLRA.

### 2. Section 20(a) Claim

In addition to their § 10(b) claim, the plaintiffs claim violations of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Liability under § 20(a) may not be imposed in the absence of an underlying violation of the Securities Act. 15 U.S.C. § 78t(a); *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990). Therefore, since the plaintiffs' § 10(b) claim fails for the reasons stated above, and the plaintiffs have no other claims under the Securities Act, the § 20(a) claim also fails. However, if the plaintiffs replead their § 10(b) claim, they may also replead their § 20(a) claim.

### C. State Law Claims

Plaintiffs also claim state securities fraud under the Texas Blue Sky Act; violations of the Texas Deceptive Trade Practices Act; common law breach of contract; unjust enrichment and detrimental reliance; breach of fiduciary duty; fraud; negligence/professional malpractice; and civil conspiracy. Defendants move for dismissal of all but the negligence/professional malpractice claim based on various legal theories. Supplemental jurisdiction allows federal courts to exercise

13

jurisdiction over related state law claims. 28 U.S.C. § 1367(a). However, "the district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." § 1367(c); *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992).

If the plaintiffs fail to replead their PSLRA claims with the particularity required, then the court may decline to exercise supplemental jurisdiction over the plaintiffs' state law claims. Therefore, the court declines to address the validity of those claims until plaintiffs have repleaded their PSLRA claim. Accordingly, all of the plaintiffs state law claims are abated. If, however, the plaintiffs do not replead their complaint within the time period specified below, the remaining claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

Pending before the court is Proskauer Rose's motion to dismiss. For the foregoing reasons, the motion is GRANTED IN PART and DENIED IN PART. Plaintiffs' RICO claim contained in count one of the complaint is DISMISSED with prejudice. Plaintiffs' PSLRA claim contained in count two of the complaint is DISMISSED without prejudice. Plaintiffs are granted leave to amend their complaint to properly allege their PSLRA claim no later than January 5, 2009. Plaintiffs' remaining state law claims are ABATED. However, if the plaintiffs do not file an amended complaint by January 5, 2009 in compliance with the court's order, then the remaining claims will be dismissed without prejudice for lack of jurisdiction.

Signed at Houston, Texas on November 20, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY