UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AFFCO INVESTMENTS, LLC, *ET AL.*, § | |
|    *Plaintiffs*, § | |
| § | |
| v. § | CIVIL ACTION H-07-3379 |
| § | |
| KPMG, LLP, *ET AL.*, § | |
|    *Defendants.* § | |

## ORDER

Pending before the court is defendant Proskauer Rose LLP's ("Proskauer") motion to dismiss plaintiffs' first amended complaint. Dkt. 135. Upon consideration of the motion, the response, the reply, the amended complaint, and the applicable law, the motion is GRANTED.

## BACKGROUND

This case involves a complicated scheme whereby taxpayers with substantial income or capital gains could claim a purportedly legal tax loss by executing a series of transactions relating to European-style digital options ("the Scheme"). According to the facts pled in the amended complaint—which the court accepts as true for the purposes of this inquiry—the Affco Plaintiffs[1] allege that although the KPMG entities[2] marketed the Scheme based on its tax-avoidance benefits, plaintiffs believed, and all official documentation represented, that these European-style digital options were legitimate investment vehicles through which investors could earn a reasonable pre-tax profit. As part of the sales pitch for the Scheme, the KPMG entities assured the Affco Plaintiffs that the strategy had been analyzed and approved by "several major national law firms" who could

---

[1] The Affco Plaintiffs are La Git 88 Trust, John H. Powers, and the Powers Children Trust.

[2] For the purposes of this order, the KPMG entities are KPMG. LLC, Deke Carbo, Helios Financial, LLC, Helios Trading, LLC, Mox Tan, James Haber, Alpha Consultants, LLC, Alpha Consultants, Inc., Irwain Rosen, and Ivan Ross, Refco Capital Markets, Ltd., Refco Capital LLC, Grant Thornton International, and Grant Thornton, LLP. These parties were previously defendants in this case, but have all been subsequently dismissed.

provide opinion letters.  Therefore, based on the assurances and representations of the KPMG entities, bolstered by the reputation of the "major national law firms," along with a Sidley Austin opinion letter, the Affco Plaintiffs agreed to use the Scheme, thereby setting in motion a series of transactions.

These transactions included the formation of several LLCs.  The LLCs were created for the sole purpose of employing the Scheme and were managed by the Helios entities[3] and the Refco entities.[4]  Under the terms of the digital options contracts, the decisions regarding the buying and selling of the options were completely controlled by the Refco entities.  The LLCs entered into offsetting digital options contracts.  In order to cause these options to eventually offset—because the goal was apparent, not actual, losses—the Scheme employed a shell game of ownership interests among the LLCs and the various types of membership interests.  At the end of this series of transactions, the Affco Plaintiffs were left with the promised apparent losses for tax purposes.  From the time the Affco Plaintiffs agreed to the Scheme, to the time the losses were generated, the Affco Plaintiffs were passive investors.

Plaintiffs' original complaint focused on the actions and representations of the KPMG and Sidley Austin Defendants, all of whom have since been dismissed.  Proskauer moved for dismissal of the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. Dkt. 91.  The court denied Proskauer's motion to dismiss for lack of personal jurisdiction and dismissed the Affco Plaintiffs' RICO claim pursuant to Rule 12(b)(6).  Dkt. 129.  Because the allegations regarding Proskauer were underdeveloped due to the initial presence of 17 other defendants, the court gave the Affco Plaintiffs

---

[3] The Helios entities are Helios Financial, LLC, Helios Trading, LLC, James Haber, and Mox Tan.

[4] The Refco entities are Refco Capital Markets, Ltd., and Refco Capital, LLC.

the opportunity to replead their PSLRA claims against Proskauer with the required particularity. In accordance with the court's order, the Affco Plaintiffs filed an amended complaint. Dkt. 130.

The amended complaint makes claims for federal securities fraud, state securities fraud, negligence and professional malpractice, breach of fiduciary duty, deceptive trade practices, breach of contract, common law fraud, and civil conspiracy. In the amended complaint, the Affco Plaintiffs allege that Proskauer worked together with other Scheme developers in order to draft model opinion letters supporting the validity of the tax savings products. They also allege that when the KPMG entities told them that "major national law firms" were willing to attest to the validity of the Scheme that they were referring to Proskauer, among others. Based on this representation by KPMG, the Affco Plaintiffs were allegedly more willing to purchase the investment products.

After the transactions concluded, but before the Affco Plaintiffs filed their tax returns, the IRS issued two notices addressing certain types of transactions that, in the opinion of the IRS, would be prohibited. It appears that the Affco Plaintiffs became worried that in light of the recent IRS notices, they would need to report their participation in the Scheme. At the behest of the KPMG entities, the Affco Plaintiffs sought a tax opinion from Proskauer after the issuance of the first IRS notice, and a supplemental tax opinion after the issuance of the second IRS notice. Proskauer's two tax opinions essentially stated that the Affco Plaintiffs' transactions were not substantially similar to any IRS prohibited transactions, and therefore, they were not required to report their involvement in the Scheme on their income tax returns. Additionally, Proskauer opined that in the event its opinion was incorrect, the Sidley Austin tax opinion letters and the Proskauer tax opinion letters should provide a defense from the IRS penalties for the Affco Plaintiffs.

Following the advice of Proskauer, the KPMG entities, and Sidley Austin, the Affco Plaintiffs reported their losses from the Scheme on their 2001 income tax returns, but did not report

3

their participation in the Scheme. They were later investigated by the IRS for participation in an abusive tax shelter, eventually paying millions in taxes, interest, and penalties. Moreover, because they did not report their participation in the Scheme, they were unable to take advantage of an IRS amnesty program for participants who disclosed participation in European-style digital options transactions.

## ANALYSIS

Proskauer moves the court to dismiss the federal securities claim pursuant to Rule 12(b)(6) and to decline supplemental jurisdiction over the remaining state claims. In the alternative, Proskauer moves to dismiss all of the state claims, except the one for professional malpractice, pursuant to Rule 12(b)(6).

**1.    Federal Securities Fraud Claims**

Plaintiffs assert violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a). Proskauer moves for dismissal of plaintiffs' federal securities claim because they have failed to adequately plead reliance or scienter.

**A.    Section 10(b) Claim**

In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). However, the court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 550 (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir.2005)) (internal quotation marks omitted).

To avoid dismissal, fraud claims under Section 10(b) of the Exchange Act must also satisfy the heightened pleading requirements imposed by Rule 9(b) and the Private Securities Litigation

Reform Act of 1995, 15 U.S.C. § 78u (1995) ("PSLRA"). *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 313, 127 S.Ct. 2499, 2504 (2007). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "To satisfy Rule 9(b)'s pleading requirements, a plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir.1997)). Furthermore, "[a]s set out in § 21D(b)(2) of the PSLRA, plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs*, 127 S.Ct. at 2504 (quoting 15 U.S.C. § 78u-4(b)(2)).

Section 10(b) makes it illegal for a person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of the SEC's rules. To state a claim under Section 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately [injured him]." *Fin. Acquisition Partners L.P. v. Blackwell*, 440 F.3d 278, 286 (5th Cir.2006). The court finds that the plaintiffs have failed to plead sufficient facts giving rise to a strong inference of scienter or showing reliance.

Plaintiffs must allege facts "in connection with the purchase or sale of securities." Accordingly, any facts used to support the Section 10(b) claim must have occurred before plaintiffs' decision to participate in the Scheme was executed. Any after-the-fact representations made by Proskauer were not "in connection with the purchase or sale of securities." Therefore, Proskauer's opinion letters regarding the reportability of the Scheme to the IRS, issued to the Affco Plaintiffs

5

after they purchased the tax savings products, cannot be used to support a Section 10(b) claim. The remaining allegations regarding Proskauer are that the KPMG entities bolstered their marketing efforts by telling the Affco Plaintiffs that the products would be approved in opinion letters issued by "major national law firms." Plaintiffs allege that Proskauer was one of these law firms and that their decision to participate in the scheme was made in part because of the representations by KPMG that the Scheme had been approved by well-regarded law firms. Notably, the Affco Plaintiffs do not specifically state that they were told that Proskauer was one of the law firms involved in the collaboration, and the only law firm that provided an opinion directly to the Affco Plaintiffs prior to their investment was Sidley & Austin.

### I. Reliance

Plaintiffs argue that "the assurances given to [them] about the legitimacy of the tax strategy could not have been given without Proskauer's participation." Dkt. 139 at 8. It is Proskauer's collaboration with the KPMG entities and others that the Affco Plaintiffs allege was fraudulent. They argue that even though Proskauer never made any statements directly to them prior to their investment decision, Proskauer's conduct was fraudulent. Conduct itself, without an actual statement, can be actionable under Section 10(b). *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 128 S. Ct. 761, (2008). However, the conduct alleged here, at best, amounts to aiding and abetting, for which there is no private cause of action. *Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164, 114 S. Ct. 1439 (1994).

In *Stoneridge*, purchasers of stock in Charter Communications, Inc. ("Charter") brought a Section 10(b) action alleging violations by several parties, including two suppliers of Charter. According to the petitioner, Charter engaged in economically substanceless transactions with the suppliers in order to inflate Charter's revenue. In disallowing the claims against the suppliers, the

Court concluded that the suppliers' "deceptive acts, which were not disclosed to the investing public, are too remote to satisfy the requirement of reliance." *Stoneridge*, 552 U.S. at 770. "It was Charter, not [the suppliers], that misled its auditors and filed fraudulent financial statements; nothing [the suppliers] did made it necessary or inevitable for Charter to record the transactions as it did." *Id.* The Court went on to say that "[i]n effect petitioner contends that in an efficient market investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect. Were this concept of reliance to be adopted, the implied cause of action would reach the whole marketplace in which the issuing company does business; and there is no authority for that rule." *Id.*

The reasoning in *Stoneridge* is applicable to this case. Here, the Affco Plaintiffs argue that Proskauer's actions, about which plaintiffs' had no specific knowledge[5] prior to their investment decision, made it possible for the KPMG entities to defraud them. While the collaboration with reputable law firms may have made KPMG's sales pitch more convincing, it did not make the alleged deception necessary or inevitable. It is exactly this type of conduct which the *Stoneridge* court determined did not adequately meet the requirement for pleading reliance.

In an effort to avoid the holding of *Stoneridge*, the Affco Plaintiffs analogize the role of Proskauer to the role of an auditor, arguing that "Proskauer's favorable opinion letters . . . served much the same function as a positive auditor's report would, by providing prospective tax-strategy participants with an 'independent' assurance that the tax strategy was above-board." While auditors who knowingly issue false or inaccurate reports may, in some instances, be liable under Section 10(b), the Affco Plaintiffs' analogy falls short. *See McGann v. Ernst & Young*, 102 F.3d 390, 397

---

[5]Plaintiffs' reference to information regarding "major national law firms" does not sufficiently allege that they had any specific information from or about Proskauer relating to the specific transaction they were contemplating.

(9th Cir. 1996) (holding that investors could state a Section 10(b) claim against an accounting firm for issuance of audit reports containing false information). Plaintiffs do not allege that they ever laid eyes on a favorable Proskauer opinion letter prior to investing, or were ever promised that Proskauer would issue a favorable opinion letter regarding their transaction. The auditor's report issued in *McGann* included the auditor's name, was filed with the SEC, and was part of the company's annual report. Since the deception in *McGann* was associated with the auditor when it was communicated to the public, the plaintiffs in *McGann* would be entitled to a presumption of reliance under the analysis in *Stoneridge*. *Stoneridge*, 552 U.S. at 769 (stating that reliance is presumed when a statement becomes public). The Affco Plaintiffs simply have not pled the same level of reliance that existed in the *McGann* case.

Since the Affco Plaintiffs have not adequately alleged reliance on a deceptive statement or deceptive conduct of Proskauer, they cannot maintain a cause of action for Section 10(b) securities fraud, and that claim must be dismissed.

### ii. Scienter

Proskauer also argues that the Affco Plaintiffs have failed to adequately allege scienter in their amended complaint. The Fifth Circuit has defined scienter as an "intent to deceive, manipulate, or defraud." *Southland*, 365 F.3d at 366 (internal citations, quotations and ellipsis omitted). The Act requires not only an inference of scienter, but a strong inference of scienter. Congress intentionally set exacting standards to curb abusive litigation. *See Tellabs*, 127 S.Ct. at 2504. In *Tellabs*, the court explained that a strong inference of scienter is one where the "inference of scienter [is] more than merely plausible or reasonable--it [is] cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 2504-05. The court should ask whether--accepting the allegations in the complaint as true and assessing them holistically rather than

in isolation–"a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference." *Id.* at 2511. That is not to say that the plaintiffs bear the burden at this point to show scienter by a preponderance of the evidence, but "must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference." *Id.* at 2513 (emphasis in original). However, the plaintiffs may present circumstantial evidence of scienter to fulfill their obligation. *Cent. Laborers' Pension Fund*, 497 F.3d at 551.

As noted above, only allegations of statements made prior to plaintiffs' investment decision can be used to support plaintiffs' federal securities claims. To show scienter, plaintiffs provide two categories of factual allegations. First, they allege that Proskauer collected tens of millions of dollars in fees by supplying legal opinions in support of tax strategies. Dkt. 139 at 11. However, an allegation of motive to perpetrate fraud based upon a desire to receive professional fees is insufficient. *See Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (stating that "[a]ccepting the plaintiffs' allegation of motive-basically that the defendant's officers and directors were motivated by incentive compensation-would effectively eliminate the state of mind requirement as to all corporate officers and defendants").

Plaintiffs further allege that Proskauer erroneously or fraudulently disregarded IRS notices when issuing their tax opinions. Dkt. 130 at 22-23. That Proskauer's advice was later contradicted by the IRS may give rise to a negligence or malpractice claim, but it does not show the requisite intent to defraud, and this generalized pleading simply does not satisfy the pleading requirements of either Rule 9(b) or the PSLRA. Therefore, the plaintiffs' Section 10(b) claim must be dismissed for failure to plead adequate facts to support a strong inference of scienter.

9

### 2.     Section 20(a) Claim

In addition to their Section 10(b) claim, the plaintiffs claim violations of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  Liability under Section 20(a) may not be imposed in the absence of an underlying violation of the Securities Act.  15 U.S.C. § 78t(a); *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990).  Therefore, since the plaintiffs' Section 10(b) claim fails for the reasons stated above, and the plaintiffs have no other claims under the Securities Act, the Section 20(a) claim also fails.

### C.     State Law Claims

Plaintiffs also plead several state claims.  Proskauer asks the court to decline supplemental jurisdiction over the remaining state claims or, alternatively, moves for dismissal of all but the negligence/professional malpractice claim based on various legal theories. Supplemental jurisdiction allows federal courts to exercise jurisdiction over related state law claims.  28 U.S.C. § 1367(a).  However, "the district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." § 1367(c); *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992).  Having decided that the Affco Plaintiffs have not adequately stated a federal securities fraud case, the court declines to exercise jurisdiction over the remaining state law claims.

## CONCLUSION

Pending before the court is Proskauer's motion to dismiss. For the foregoing reasons, the motion is GRANTED. Plaintiffs' federal securities claim is DISMISSED WITH PREJUDICE. Plaintiffs' state claims are DISMISSED WITHOUT PREJUDICE.

Signed at Houston, Texas on September 28, 2009.

_____
Gray H. Miller
United States District Judge